# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PATRICIA DELGADO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 16 C 1899 |
| v. ) | |
| ) | Judge Joan H. Lefkow |
| THE UNITED STATES OF AMERICA, ) | |
| SILVER CROSS HOSPITAL and ) | |
| MEDICAL CENTERS, and ) | |
| MAZEN M. KAWJI, M.D., ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Patricia Delgado makes claims of medical malpractice against the United States of America, Silver Cross Hospital and Medical Centers, and Dr. Mazen M. Kawji. (Dkt. 29, Amended Complaint (Amend. Compl.).) Before the court is the motion of Silver Cross and Dr. Kawji (collectively, defendants) to dismiss counts II and III of Delgado's amended complaint. (Dkt. 31).[1] For the following reasons, counts II and III are dismissed without prejudice.[2]

## BACKGROUND

On March 5, 2013, Patricia Delgado went into labor and was admitted to Silver Cross Hospital. (Amend. Compl. ¶ 9.) At that time, Delgado's regular physician, Dr. Jeffrey Williams, D.O., was not available to deliver her baby. (*Id.* ¶¶ 7, 10.) As such, she was placed under the care

---

[1] On September 27, 2016, the court granted Dr. Kawji's motion to join Silver Cross's motion to dismiss and to apply the arguments raised therein to count III against him. (Dkts. 42, 45.)

[2] The court has exclusive jurisdiction over the claims against the United States under 28 U.S.C. § 1346(b). On June 1, 2016, this court granted defendants' unopposed motion for permissive intervention. (Dkt. 21.) The court has supplemental jurisdiction over the claims against defendants under 28 U.S.C. § 1367. Venue is appropriate in this district under 28 U.S.C. § 1402(b).

of Dr. Cheryl Thompson-Cragwell, the on-duty obstetrics and gynecology physician (OB/GYN), who managed the delivery of Delgado's baby. (*Id.* ¶¶ 11–12.)

There were no complications during her pregnancy (*id.* ¶¶ 8, 13) but, after giving birth, Delgado suffered from ongoing vaginal hemorrhaging, abdominal pain, and cramping (*id.* ¶ 14). No effort was made by Dr. Thompson-Cragwell, or anyone else at Silver Cross Hospital, to stop or determine the source of the bleeding. (*Id.* ¶ 16.) On March 7, 2013, Delgado was discharged from the hospital. (*Id.* ¶ 15.)

Delgado's condition worsened after being discharged such that on March 9, 2013, she was admitted to Silver Cross's Emergency Department under the care of the attending physician. (*Id.* ¶¶ 18–20.) Dr. Thompson-Cragwell was, once again, the on-duty OB/GYN. (*Id.* ¶ 21.) Dr. Thompson-Cragwell ordered a pelvic ultrasound, which revealed that retained products of conception remained in Delgado's uterus. (*Id.* ¶ 22.) Dr. Thompson-Cragwell requested consultations from various physicians and specialists, including Dr. Mazen M. Kawji, a cardiologist. (*Id.* ¶¶ 4, 25.) For the next thirteen days, Delgado received treatment for her excessive bleeding as well as for developing heart and kidney conditions. (*Id.* ¶ 27.) During that time (1) Dr. Thompson-Cragwell performed a surgical procedure to remove the retained products of conception (*id.* ¶ 28); (2) an on-duty nurse administered excessive doses of Norco, a narcotic medication to Delgado (*id.* ¶ 29); (3) Dr. Thompson-Cragwell and Dr. Kawji prescribed and administered Coreg to treat Delgado's blood pressure, even though such medication was contraindicated by her medical condition (*id.* ¶ 30); (4) Dr. Kawji prescribed a beta-blocker, which was contraindicated by her medical condition (*id.* ¶ 32); and (5) Dr. Thompson-Cragwell prescribed and administered Toradol, which was contraindicated by her medical condition (*id.* ¶ 33). Delgado alleges that as a result of these actions she "was exposed to and/or developed

and/or was treated for serious medical conditions, including but not limited to E. coli, staph infection, sepsis, Acute Tubular Necrosis, a permanent condition of TTP-HUS, cardiomyopathy and congestive heart failure, acute kidney injury, Disseminated Intra-vascular Coagulation, liver failure, respiratory failure, hypotension, septic shock, and renal damage." (*Id.* ¶ 34.)

Delgado's attorney, separately from her complaint, filed an affidavit required for medical malpractice claims brought under Illinois law which, in relevant part, stated:

> I have consulted and reviewed the facts of this case with a physician and surgeon licensed to practice medicine in all of its branches. This physician has been made aware of all the pertinent medical records. I have been provided with a physician's report indicating that there is a reasonable and meritorious cause for the filing of this action. The report of the reviewing healthcare professional is attached to this Affidavit. Based upon the consultation and the conclusions of the consulting physician, I believe there is a reasonable and meritorious cause for the filing of this action.

(Dkt. 10 at 1.) Although the attorney's affidavit references a single physician report, Delgado in fact attached two physician reports to her amended complaint. One of the reporting physicians is board certified in emergency medicine (Amend. Compl. at 14 ¶ 1) and the other is board certified in obstetrics and gynecology (*id.* at 16 ¶ 1). Other than their different board certifications and States in which they hold their licenses, the reports contain identical paragraphs setting forth each physician's qualifications:

> I am a physician and surgeon licensed to practice medicine in all of its branches . . . . I am familiar with the issues of care and treatment herein. I devote 75% of my time in either medical practice or in teaching the type of medicine at issue herein. I have familiarity with the standard of care in the State of Illinois on the matters at issue herein. I am qualified by experience, education and training within the standard of care, methods, procedures and treatments relevant to the allegations at issue in this case, and I have practiced and taught in this field within the past five years.

(*Id.* at 14 ¶ 1, 16 ¶ 1.)

Defendants contend that the amended complaint must be dismissed because Delgado has failed to comply with section 2-622 of the Illinois Code of Civil Procedure, 735 Ill. Comp. Stat. 5/2-622, as required for medical malpractice claims brought under Illinois law. *See Ortiz* v. *United States*, No. 13 C 7626, 2014 WL 642426, at *3 (N.D. Ill. Feb. 19, 2014) (noting that section 2-622 is a substantive requirement that applies to medical malpractice claims brought in federal courts).

## LEGAL STANDARD

Section 2-622 requires a plaintiff asserting a medical malpractice claim to attach to her complaint an affidavit by her attorney, when represented, attesting that the affiant has reviewed the facts of the case with an appropriately qualified health professional who has determined in a written report that there is "reasonable and meritorious cause" for asserting the claim. 735 Ill. Comp. Stat. 5/2-622(a)(1). As applicable here, the reviewing health professional must be a physician licensed to practice medicine in all its branches. *Id.* A copy of the physician's report must be attached to the attorney affidavit and "clearly identify[] the plaintiff and the reasons for the reviewing health professional's determination that a reasonable and meritorious cause for the filing of the action exists. *Id.* Both the attorney affidavit and the physician report are required, and failure to provide either results in dismissal. *See Plummer v. Welborn*, No. 13 C 8253, 2016 WL 2937029, at *5 (N.D. Ill. May 20, 2016) (granting a motion to dismiss where the plaintiff filed a complaint with a physician report but failed to include a separate attorney affidavit).

## ANALYSIS

Defendants argue that the physician reports do not meet section 2-622's requirements because (1) the physicians are not qualified to offer their opinions; (2) certain allegations of negligence that appear within those counts should be stricken because they are not supported in

the reports; (3) the reviewing physicians' reports regarding Silver Cross do not set forth any facts that could form the basis of liability;[3] and (4) the reports commingle allegations of agency and institutional negligence against Silver Cross.

I. **Qualifications**

Defendants argue (1) that the emergency room physician is not qualified to offer an opinion because the report does not specify the physician's experience treating patients suffering from childbirth complications in non-emergency settings or running a hospital and (2) that the OB/GYN physician is not qualified to offer an opinion regarding hospital administration or narcotics organizational schemes.[4] Defendants rely heavily on *Cuthbertson* v. *Axelrod*, 669 N.E.2d 601, 282 Ill. App. 3d 1027, 218 Ill. Dec. 458 (1996), in which the Illinois Appellate Court affirmed a dismissal with prejudice for failing to satisfy section 2-622. *Cuthbertson* is relevant here, but defendants' reliance on it is somewhat overblown. Among the case's applicable insights is that, despite the statutory language that may be read to indicate otherwise, the requirements of section 2-622(a)(1)(i)–(iii) need to be met both in the attorney attestation and the physician's report. *Id.* at 608.[5]

---

[3] "Under Illinois law, a hospital may be found liable in a medical negligence case under two separate and distinct theories: (1) liability for its own institutional negligence and (2) vicarious liability for medical negligence of its agents or employees." *Groeller* v. *Evergreen Healthcare Ctr. LLC*, 2015 IL App (1st) 140932 ¶ 21.

[4] There is no dispute that the OB/GYN is sufficiently qualified to offer an opinion relating to the quality of the treatment that Delgado received from other OB/GYNs. (*See* dkt. 31 at 8 n.6.) As such, the opinions actually at issue are (1) whether the emergency room physician is qualified to render an opinion regarding the standard of care for (a) discharging an actively bleeding patient, (b) treating a post-delivery vaginal hemorrhage, (c) organizing narcotics, and (d) using medications to treat Delgado's various conditions, and (2) whether the OB/GYN physician is qualified to render an opinion regarding the institutional standard of care for a hospital for (a) treating and discharging a patient with active bleeding and (b) organizing narcotics.

[5] Other Illinois Appellate Court cases—and at least one from the First District—have likewise required the physician's report to set forth the reviewing physician's qualifications. *See Hull* v. *S. Ill. Hosp. Srvs.*, 826 N.E.2d 930, 933, 356 Ill. App. 3d 300, 292 Ill. Dec. 494 (2005) ("The physician's

Applying that rule, *Cuthbertson* found both the first amended affidavit and physician report insufficient because, although both represented that the physician had recent experience as a physician, neither stated that the physician had recent experience in the health care area that was at issue in the case. *Id*. at 606, 608. The court emphasized that it was not imposing "artificial barriers" but it was enforcing the statutory requirement of recent experience in the area of healthcare at issue. *Id.* Further, the court accepted the plaintiff's argument that, so long as the statutory requirements are met, the reviewing physician need not be a specialist in the field at issue so long as they have had recent experience in that field. *Id.*[6]

When faced with similar arguments pressing for a greater degree of specialization than section 2-622 requires, courts in this district have aligned with the Illinois courts in not requiring it. *See Estate of Nemirow ex rel.* v. *Univ. of Chi. Hosps.*, No. 07 C 6413, 2008 WL 4543016, at

---

qualifications must be set forth by the doctor in his accompanying medical report." (citing *Cuthbertson*, 669 N.E.2d at 608)); *Cutler* v. *Nw. Suburban Cmty. Hosp., Inc.*, 939 N.E.2d 1032, 1044, 405 Ill. App. 3d 1052, 345 Ill. Dec. 852 (2010) ("It has been held that a deposition transcript can be a written report within the meaning of section 2-622 and can be relied upon to satisfy the statutory requirements of the written report. Accordingly, the record in the present case demonstrates that [the physician] met the qualifications required by section 2-622(a)(1) to author the written report and render an opinion regarding the merit of the plaintiff's action." (internal citation omitted)). A court in this district has also imposed the same requirement. *See Maldonado* v. *Sinai Medical Grp., Inc.*, No. 06 C 4149, 2008 WL 161671, at *5–6 (N.D. Ill. Jan. 16, 2008) ("Dr. Cohn has adequately attested to his qualifications in this area and to his ability to render an opinion about the relevant standard of care of the treating physicians.").

[6] Silver Cross's argument that a hospital administrator is required to opine on its institutional negligence is not accepted. True, such a report may be required in certain circumstances. *Cf. Jacobs* v. *Rush North Shore Medical Center*, 673 N.E.2d 364, 367, 248 Ill. App. 3d 995, 220 Ill. Dec. 452 (1996) (discussing, in dicta, that negligence based on a hospital's failure to properly screen physicians granted privileges in the hospital may require the report of a hospital administrator). Here, however, plaintiff has alleged the hospital's liability based on conduct that would not be within the exclusive realm of a hospital administrator. Further, in their reply brief, defendants repeatedly cite *Dobrzeniecki* v. *Salisbury*, No. 11 C 7956, 2012 WL 1531278 (N.D. Ill. Apr. 27, 2012), for the proposition that a physician qualified in health care administration is necessary to opine on a hospital's institutional negligence. That was not actually the holding of the case, as the court dismissed because it was unclear what negligence the plaintiff was "alleging the hospital committed in its own right." *Id.* at *12. The same is true of *Jacobs*, 673 N.E.2d 364, the case on which *Dobrzeniecki* relies. *Id.* at 367. Ultimately, the proposition traces back to dicta in *Comfort* v. *Wheaton Family* Practice, 594 N.E.2d 381, 385, 229 Ill. App. 3d 828, 171 Ill. Dec. 529 (1992), where the court observed that, "[h]ad the clinic violated a duty to supervise, then perhaps a certificate filed by a professional in health care administration would be required. However, since plaintiff is alleging only malpractice, she must file a certificate dealing with the commission of that act."

*3 (N.D. Ill. Oct. 7, 2008); *Hall* v. *Cook Cnty.*, No. 14 C 7887, 2015 WL 5950839, at *3 (N.D. Ill. Oct. 13, 2015); *Maldonado*, 2008 WL 161671, at *5–6.

Although the reviewing physicians are qualified to make the reports, their reports do not comply with the requirement that a physician's credentials and the nature of their recent experience be set forth in some form. *See Jacobs*, 673 N.E.2d at 366 n.1 (noting that the report did not identify the physician (as is permitted by § 622(a)(1)), but it "also lack[ed] a *curriculum vitae* or other document to suggest what credentials the reviewing physician possesses"). Even in *Maldonado*, on which Delgado relies, the plaintiff provided this additional information. *See* 2008 WL 161671, at *2 ("I am a licensed physician in the state of Illinois. I am a board certified physician in internal medicine and on the faculty at the Northwestern University Feinberg School of Medicine. I am currently practicing internal medicine.") Given this precedent—and since the attorney affidavit is also noncompliant as discussed in the following paragraph—the court will dismiss counts II and III without prejudice to filing amended physician reports that identify with more particularity the physicians' respective credentials and experience. As noted in *Jacobs*, this does not require that the reviewing physicians be identified, but either a curriculum vitae or a statement in the report setting forth the physicians' credentials and experience is necessary.

Additionally, as noted, the attorney affidavit does not satisfy section 2-622(a)(1)(ii). Nowhere does the attorney state that he reasonably believes that either of the reviewing physicians has in the last six years practiced or taught in the area of health care at issue here. And the affidavit, which only addresses the OB/GYN reviewing physician, is not attached to the amended complaint, as required by section 2-622(a). *See* 735 Ill. Comp. Stat. 5/2-622(a). This is an omission that can be easily corrected and does not warrant dismissal with prejudice. Accordingly, the court will address defendants' remaining, independent arguments.

7

## II. Allegations Without Support

Relying on *Ortiz* v. *United States*, No. 13 C7626, 2014 WL 642426, at *3 (N.D. Ill. Feb. 19, 2014), defendants argue that six of the fifteen allegations of negligence in count II must be stricken from the complaint because they are not supported by either of the physician reports.

The six allegations that defendants argue are not supported in the physicians' reports are that defendants

> Failed to properly perform the birth of plaintiffs [sic] child (Amend Compl. ¶ 46(a));
>
> Failed to properly evaluate and diagnose the Plaintiffs [sic] medical condition upon readmission to the Silver Cross Emergency Department (*id.* ¶¶ 46(f), 36(a));[7]
>
> Failed to properly inform Plaintiff upon readmission to Silver Cross that Retained Products of Conception were left in her at the time of child birth (*id.* ¶¶ 46(g), 36(b));
>
> Fell below the standard of care required of physicians, surgeons and providers of their type (*id.* ¶¶ 46(j), 36(e));
>
> Was [sic] negligent in their evaluation, diagnosis, treatment plan and treatment of Plaintiff (*id.* ¶¶ 46(k), 36(f));
>
> Was [sic] otherwise careless and negligent in their care and treatment of Plaintiff (*id.* ¶¶ 46(o), 36(g)).

Defendants are correct that these allegations do not find support in the physicians' reports, but only the first three describe conduct that would be in a physician's report. The physicians' reports do not provide any opinion that the delivery was negligently performed. To the extent negligence is alleged relating to the child birth, the negligence is confined to the failure to remove retained fragments of conception, which is the subject of a separate allegation. (*See* Amend. Compl. ¶ 46(b).) Likewise, the physicians' reports contain no opinions regarding

---

[7] In the amended complaint, paragraph numbers 35–38 repeat in each count. The citations to paragraph 46 refer to that paragraph in count II and the citations to paragraph 36 refer to that paragraph in count III.

whether defendants properly evaluated, diagnosed, and informed Delgado regarding the retained products of conception on her readmission. As to the remaining three allegations challenged by defendants, they are allegations of liability. Liability is a conclusion of law, and a physician is not required to opine on legal conclusions in a physician report. *Comfort*, 594 N.E.2d at 385.

Accordingly, even if the issues regarding the physicians' qualifications were not present, paragraphs 46(a), (f), (g), and 36(a), (b), would be stricken.

### III. Institutional and Agency Liability

Defendants argue that Delgado's allegations of institutional and agency negligence should be stricken because they are not supported by the physicians' reports. They argue that the physicians' reports fail to describe what institutional conduct of Silver Cross was insufficient and do not describe what protocols Silver Cross should have established for caring for patients with post-delivery vaginal hemorrhaging and organizing narcotics.[8] And defendants argue that the physicians' reports do not support Delgado's allegations of agency liability against Silver Cross because those reports refer to unnamed medical personnel instead of identifying the specific agents alleged to be at fault.

The physician reports do adequately explain what institutional conduct should have been in place. At the very minimum, the reports identify that the standard of care is such that institutional safeguards, *i.e.*, hospital policy, should be in place to immediately treat and prevent the discharge of a patient who has active post-delivery vaginal hemorrhaging (*see, e.g.*, *id.* at 14

---

[8] Defendants also argue that the allegations of institutional negligence relating to Silver Cross's alleged failure to inform should be stricken because the physicians' reports fail to identify what independent duty Silver Cross (as opposed to the individual defendants) had to inform Delgado of the complications arising from her treatment and how that omission was negligent. As discussed in the previous section, the physicians' reports do not discuss the alleged negligence relating to a failure to inform and, therefore, those allegations have already been stricken. The court, therefore, will not address defendants' argument, which appears to be that as a matter of law an institution has no duty to have a policy in place so that patients are properly informed as to their treatment.

9

¶ 3, 15 ¶ 1) and that a narcotic should not be placed in a bin bearing a different label (*see, e.g.*, *id.* at 14 ¶ 4, 17 ¶ 3). The reports make clear that their authors believe that, had Delgado received timely treatment for her vaginal hemorrhage and had not been prescribed an incorrect dosage, her condition would not have deteriorated. (*See, e.g.*, *id.* at 14 ¶ 4.)

As to their agency argument, defendants miss the point when they argue that Delgado's allegations of agency liability should be stricken because they do not identify the specific providers alleged to have acted negligently, if not by name then by date and time, title, and type of care provided." (Dkt. 31 at 11.) Defendants provide no authority to support their argument. In *Maldonado*, 2008 WL 161671, at *8, however, the court required that the report "clearly identify each treating physician's conduct when multiple physicians are named as defendants" The court continued, "The court believes that this principle should extend as well to cases in which an institution is alleged to be vicariously liable for the conduct of unnamed persons in its employ." *Maldonado*, 2008 WL 161671.

This standard is satisfied here. The physicians' reports identify conduct by physicians that are alleged to be agents or apparent agents of Silver Cross (*see, e.g.*, dkt. 29 at 15 ¶¶ 1–2) and, to the extent that Silver Cross may be held vicariously liable for the acts of unnamed medical professionals, the conduct of those professionals is readily identifiable from the physicians' reports—*i.e.*, those who cared for Delgado but nonetheless allowed her to be discharged despite her active bleeding and the individual who incorrectly filled the narcotics bin. Defendants try to frame Delgado's allegations as so expansive that "[t]he reports are the functional equivalent of pointing to the haystack and asking Silver Cross to find the needle." (Dkt. 31 at 11.) Such a characterization is disingenuous. This is not an instance in which the reports merely allege that a patient was admitted to a hospital and received negligent care.

10

Rather, the reports are clear as to what the alleged negligence is, and without taking discovery Delgado lacks the tools to identify each of the medical professionals involved. This is information that is uniquely in Silver Cross's control and is not the type of information that dooms a physician's report under section 2-622.

## IV. Commingled Allegations

Defendants argue that count II should be dismissed under section 2-603(a) of the Illinois Code of Civil Procedure, 735 Ill. Comp. Stat. 5/2-603(a), because the physicians' reports improperly commingle Delgado's theories of institutional negligence and agency liability.[9] The argument is without merit as section 2-603 does not apply in federal court. *See Peck* v. *W. Aurora Sch. Dist. 129*, No. 06 C 1153, 2006 WL 2579678, at *5 n.4 (N.D. Ill Aug. 30, 2006) ("[I]n federal court parties are required to abide by the Federal Rules of Civil Procedure, not the pleading requirements of Illinois state court." (citing *AXA Corp. Sols.* v. *Underwriters Reinsurance Corp.*, 347 F.3d 272, 277–78 (7th Cir. 2003)).

Defendants make a similar argument under section 2-622. The argument is unclear, but defendants appear to argue that the physicians' reports are insufficient because (1) the reports comingle theories of liability and (2) address multiple categories of defendants in the same paragraph.

The comingling of theories argument fails. Defendants point to no authority in support of their argument and, as the Illinois Appellate Court has stated, "liability is a conclusion of law . . . of which a medical expert may not be qualified to make an opinion. Section 2-622 requires the opinion of a medical expert, not a legal expert." *Comfort*, 594 N.E.2d at 385. Reviewing physicians, therefore, are tasked with reviewing whether conduct fell below the standard of care,

---

[9] Defendants also discuss physician and nurse negligence in the course of their argument. Those are not separate theories of negligence as to Silver Cross, however, but the alleged negligence of the physician and nurse that underlies Delgado's agency liability theory.

11

*see Maldonado*, 2008 WL 161671, at *8, not with framing particular theories of liability, *see id.* at *4 ("[A] plaintiff need not secure an additional report for any defendant whose claimed liability is wholly vicarious." (citing *Comfort*, 594 N.E.2d at 385)).

Defendants' second argument regarding multiple categories of defendants in the same paragraph is unsound largely for the same reasons. While the conduct of multiple medical professionals is discussed, Silver Cross is the only defendant at issue. Defendants focus their attention on largely conclusional sentences of the section 2-622 reports, but they ignore the more substantive components discussed above. These additional passages are sufficient to meet section 2-622's requirements. Such reasoning is in accord with the purpose of the law, which is to deter frivolous suits, not to deprive plaintiffs of their substantive rights by strictly construing the statute. *See Cutler*, 939 N.E.2d at 1042.

## CONCLUSION AND ORDER

For the foregoing reasons, defendants' motion to dismiss (dkt. 31) is granted. Counts II and III of Delgado's amended complaint are dismissed without prejudice. Delgado may file an amended complaint consistent with this opinion, including attaching the attorney's affidavit to the complaint, no later than January 20, 2017.

Date: December 16, 2016

_____
U.S. District Judge Joan H. Lefkow